UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RHONDA HAYNIE, | No. CV 06-1008-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 24, 2006, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 22, 2006, and March 23, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 9, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on January 17, 1958. [Administrative Record ("AR") at 273.] She has an eighth grade education and past work experience as a cafeteria counter attendant and a housekeeper. [AR at 279-81, 295, 310-15, 318-21.]

On September 29, 2003, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she had been unable to work since September 1, 1998, due to depression and back pain.[1] [AR at 272-76, 289-91.] After a denial of her application at the initial level, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on July 25, 2005, at which time plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 521-64.] On August 26, 2005, the ALJ determined that plaintiff was not disabled. [AR at 242-51.] When the Appeals Council denied review on December 20, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 234-37.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

---

[1] Plaintiff had previously received Supplemental Security Income payments from May 1994, until November 1997, due to drug and alcohol abuse. Those payments ended when the law changed. She filed a prior application for Supplemental Security Income payments on October 2, 2001, which was denied by ALJ Eric Benham on March 27, 2003. [AR at 11-15.] The decision was affirmed by the District Court. A presumption of continuing non-disability applies, which can be rebutted by plaintiff proving changed circumstances indicating greater disability. Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988).

adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.
## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability. [AR at 243.] At step two, the ALJ concluded that plaintiff had the "severe" impairments of low back pain, anxiety, depression, and language/learning disability. [AR at 250.] At step three, the ALJ determined that plaintiff's impairments did not meet or equal any impairment in the Listing. [AR at 243.] The ALJ further opined that plaintiff retained the residual functional capacity ("RFC")[2] to perform light exertion work.[3] [AR at 250.] At step four, the ALJ concluded that plaintiff was not capable of performing her past relevant work. [AR at 243.] At step five, the ALJ found that plaintiff could perform other work

---

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]    Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the ALJ concluded that plaintiff can sit and stand/walk 6 hours total each in an 8 hour workday and needs to alternate sitting and standing according to need. [AR at 245.] He further concluded that plaintiff is able to perform unskilled work with moderate difficulty with detailed work and interacting with the general public. [AR at 247.]

that exists in significant numbers in the national economy. [AR at 243.] Accordingly, the ALJ determined that plaintiff was not disabled. [AR at 242-51.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) failed to properly evaluate the opinions of the treating physician, and (2) improperly rejected plaintiff's subjective complaints. Joint Stipulation ("Joint Stip.") at 2-3. The Court agrees that the ALJ failed to properly weigh the opinions of plaintiff's treating physician, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINIONS**

Plaintiff contends that the medical evidence shows that plaintiff's condition has worsened since the first ALJ's decision of March 27, 2003, and that the ALJ improperly rejected the opinion of Dr. Estela Ilagan. Joint Stip. 4-5. Plaintiff further contends that even if this rejection were proper, she lacks the mental capacity to perform the occupations identified by the vocational expert. Joint Stip. at 6.

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). Although the treating physician's opinion is entitled to great deference, it is not necessarily conclusive as to the question of disability. Magallanes, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989)). Where the treating physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons.

Lester, 81 F.3d at 830. Where the treating physician's opinion is contradicted, the ALJ may reject it in favor a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Ramirez v. Shalala, 8 F.3d 1449, 1453-54 (9th Cir. 1993).

The record shows that plaintiff received mental health counseling and treatment from the American Indian Counseling Center from September, 2000, through July, 2005. [AR at 503-18.] This includes numerous sessions since March 27, 2003, the date of the first ALJ's decision denying plaintiff Supplemental Security Income payments. [AR at 504-09.] Plaintiff testified that she has been seeing Dr. Estela Ilagan approximately once a month for medications, and her counselor, Charlotte Lujan, every one to two weeks depending on plaintiff's mental state. [AR at 534-35.] She indicated that her medications help her at times, but not when she is in stressful situations. [AR at 536-37.] In addition to the positive treatment notes cited by the ALJ (the ALJ points to various parts of those notes which show that plaintiff was stable with medication, that she felt hopeful that she could work or attend school, and that she at times was happy and energetic) [AR at 247], plaintiff at times also displayed an anxious affect, was stressed over her housing situation which caused her worry and irritability, and was at times in distress. She was not sleeping well and had crying episodes. Plaintiff was reported to be fearful of interaction with people. In May, 2005, toward the end of her reported sessions, she was observed to be sad, tired and isolating.

Following a consultative examination performed by Dr. Nora Paculdo on March 22, 2003, Dr. Paculdo concluded that plaintiff can "sustain focused attention, complete everyday routine, follow and understand simple to complex instructions. She can perform work activities on a consistent basis, without special or additional supervision. She [can] interact with coworkers and with the public. She can deal with the usual stresses encountered in competitive work." Plaintiff's prognosis was seen as good, and Dr. Paculdo opined that plaintiff's condition can be expected to improve. In reaching her conclusions, Dr. Paculdo reviewed no medical records concerning plaintiff. [AR at 377-79.]

On January 25, 2005, plaintiff underwent a neuropsychological evaluation at the request of her therapist from the American Indian Counseling Center. [AR at 436-45.] A series of tests were administered which showed, in part, that her performance I.Q. was in the average range, her verbal I.Q. was in the borderline range, and her overall I.Q. was also in the borderline range. The assessment revealed among other things that plaintiff had impairments in processing speed, especially of verbal material and motor dexterity; low average/borderline performance in basic attention; the presence of significant emotional distress, anxiety, depression and a tendency to focus on physical symptoms; a significant language/learning disability; and difficulty with basic attention. While it was found that she had the intellectual capacity to maintain employment, she was experiencing emotional and psychological difficulties that may "substantially interfere with successful employment." It was recommended that she receive on-going individual psychotherapy.

In a Mental Assessment completed by Dr. Ilagan on May 24, 2005, plaintiff was found to be markedly limited in her ability to remember locations and work-like procedures, carry out detailed instructions, make simple work-related decisions, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others. She was found to be moderately limited in her ability to understand and remember short and simple instructions as well as detailed instructions, carry out short and simple instructions, perform activities within a schedule and maintain regular attendance, complete a normal work day and work week without interruptions from psychologically-based symptoms and perform at a consistent pace, interact appropriately with the general public, ask simple questions or request assistance, maintain socially appropriate behavior, respond appropriately to changes in the work setting, and be aware of normal hazards and take precautions. [AR at 431-34.] In a March 16, 2005, letter from her therapist, Ms. Lujan related that plaintiff was taking Zoloft and Effexor, and that she was diagnosed with depression and post-traumatic stress disorder from which she "decompensates rapidly when she is not on medications and periodically when [she] is on meds." She described that plaintiff "begins to isolate, have uncontrolled crying spells, negative thinking and lack of motivation, concentration and energy. Her mental disorder causes her to not have very good days. She has recurrent and intrusive recollections of traumatic experiences." Ms.

Lujan further opined that plaintiff "is limited markedly if she is overwhelmed with stressful situations when faced as being the focal point. She becomes apprehensive, anxious, restless, shaky, questionable and does not know what to say or do. If she is put in this position at a job or school, she will drop out or quit[]." [AR at 435.]

The ALJ gave no weight to the opinions of Dr. Ilagan and Ms. Lujan, concluding that their "extreme assessments" are not supported by any objective findings or the treatment notes, which show that most of plaintiff's visits to the counseling center were for assistance in obtaining housing and for problems with her roommate. The ALJ concluded that the mental treatment records and the findings from Dr. Paculdo's mental examination "do not indicate any change in the claimant's mental condition since Judge Benham's decision." [AR at 247.]

The ALJ's reliance on Dr. Paculdo's examination to support his conclusion that plaintiff's mental condition had not changed since Judge Benham's decision is improper, since that examination took place five days prior to Judge Benham's decision, i.e., during the period previously adjudicated. Thus, it cannot be determinative of whether there were any changed circumstances since the last decision that would indicate a greater disability. To the extent the ALJ based his decision on that examination, remand is required. See also Joint Stip. at 8 (defendant concedes that the ALJ found that plaintiff's condition had not changed since the previous denial of her application "[b]ased on Dr. Paculdo's report"; "the ALJ . . . relied on the well-supported conclusions of . . . Dr. Paculdo."). Indeed, the only evidence concerning plaintiff's mental condition since the first ALJ decision appears to be the more recent records from the American Indian Counseling Center, Dr. Ilagan's assessment, Ms. Lujan's letter, and the neuropsychological testing.[4] As the treating physician's opinion of plaintiff's condition during the relevant time frame is not contradicted, it can be rejected only for clear and convincing reasons.

---

[4] Although a state agency physician concluded on April 9, 2004, that plaintiff had no severe mental impairment [AR at 388-401], the basis of that evaluation is unclear, and it was without the benefit of Dr. Ilagan's assessment, Ms. Lujan's letter, the more recent treatment notes, or the neuropsychological evaluation. In any event, the ALJ did not primarily rely on that evaluation in reaching his decision, and in fact implicitly rejected it in finding that plaintiff had various severe mental impairments.

The reasons provided by the ALJ do not meet this standard. For example, while many of plaintiff's visits to the center may have been related to problems with her roommate, these problems -- to the extent they may stem from a psychologically-based impairment -- would be entirely consistent with Dr. Ilagan's conclusion that plaintiff is moderately limited in her ability to interact appropriately with the public. Further, although some of the treatment notes show that plaintiff improved with medications, others show that she was still experiencing difficulties, and provide support for the assessments. That plaintiff is fearful of interacting with others supports the conclusion that she is limited in her ability to accept instructions and respond to criticism from supervisors, and interact with the public. Her crying episodes would certainly impact on her ability to carry out instructions and make decisions. The ALJ's selective reliance on only a portion of the medical evidence was misleading, and did not serve as a clear and convincing reason for rejecting plaintiff's testimony. See Reddick v. Chater, 157 F.3d 715, 723 (9th Cir. 1998) (it is impermissible for the ALJ to develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ may not reach a conclusion and justify it by ignoring competent evidence in the record that would suggest an opposite result); Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) (the ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability), citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984).

In addition, the ALJ in rejecting Dr. Ilagan's opinion does not account for Dr. Ilagan's subjective assessment of plaintiff's condition. "The subjective judgments of treating physicians are important, and properly play a part in . . . medical evaluations. Accordingly, the ultimate conclusions of these physicians must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). This makes sense as "treating physicians . . . bring a 'unique perspective to the medical evidence'. . . . The treating physician's continuing relationship with [plaintiff] makes him especially qualified to evaluate reports from examining doctors, to integrate the medical information they provide, and to form an overall conclusion as to functional capacities and limitations, as well as to prescribe or approve the overall course of treatment." Lester, 81 F.3d at 833, citing 20 C.F.R. § 404.1527(d)(2). This is especially true where the treating physician

9

reached her conclusion based at least in part on observations of plaintiff during nearly five years of treatment; to the extent Dr. Paculdo's report may have any relevance, she had only one session with plaintiff since the start of 2003.

Accordingly, remand is appropriate.[5]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to give proper consideration to the opinions of plaintiff's mental health providers during the relevant time frame. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: January 11, 2007

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court rejects plaintiff's contention that the ALJ inappropriately assessed her credibility. The conservative nature of her treatment and her range of daily activities, when coupled with a comparison of her subjective complaints against the objective findings, are all proper bases that the ALJ may use. See Joint Stip. at 12-14; see, e.g., Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (lack of treatment and daily activities inconsistent with total disability undermined subjective testimony of disabling pain); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ may properly rely on inconsistencies in the claimant's testimony, and the fact that only conservative treatment had been prescribed); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (ALJ may properly rely on claimant's daily activities, inconsistencies in claimant's testimony, and failure to pursue treatment).